Opinion op the Court.
Elijah Hanks filed his bill in chancery, against the executor of Spencer Gill, deceased, stating that said executorhad obtained judgments against him on nine several notes, executed by him to the decedent, amounting in the whole, exclusive of interest, to $980. That various dealings had taken place between him and the decedent in his lifetime; and that “for the purpose of securing said Gill any money that he then owed or might owe to said Gill,” he executed to said Gill an absolute deed for his farm; and that said Gill, in re- *96 iurn, executed to him an instrument of writing to the following effect:
“ This is to certify all who it may concern, that after Elijah Hanks has paid me all he owes me, and may hereafter owe me, that I give up all claims or pretensions of a claim, to any part of his property, 1 have purchased of him; and until he discharges all debts due me, I hold all the property he has sold me as my own property. Given under my hand this sixteenth day of April, 1314,
^ (Signed) SPENCER GILL.”
^ That it was afterwards agreed between him and said Gill, that for the purpose of paying off all the money due to Gill, he, Planks, should sell the tract of land so conveyed, and that the bonds should be taken to Gill to secure the purchase money. That in conformity with said agreement, the land was parcelled out into different parcels and sold to several .purchasers, for the slim, in the aggregate, of $1559; one hundred of which was paid by one of the purchasers to Gill, and the residue secured by the bonds of the purchasers; all which the executor held, or had received the amount of from the obligors, and yet pressed the debts due by his notes to the estate. That shortly after the sale of the lands, Gill sickened and suddenly died; so that a settlement did not take place, and his notes were not lifted. He obtained an injunction, and prayed that it might be made perpetual and the balance be decreed to him.
The answer admits the judgments on the nine notes, the conveyance of the land and other property to secure the debts, and that the land was sold and the notes given and money paid therefor to his testator, and that part of said bonds have been collected since the death of the testator; but denies that the complainant is entitled to any credit therefor, because the complainant, at the time of his conveyance, was indebted to the testator about fourteen or fifteen hundred dollars, for which he had given a note with a certain Jeremiah Wilson as security. That Wilson having become uneasy at his remaining security, urged the complainant to take up the note, which he did by conveying his estate; and that the note was then delivered to Wilson, which, when discounted against the price of the land, will leave little or nothing due. And the answer *97 further insists, that the nine notes were all executed since the date of the deed, and were for subsequent loans and accommodations.
The court below decreed a perpetual injunction, without any balance being allowed against the executor; from which decree the executor has appealed.
There can be no doubt but that the complainant was entitled to the benefit of the land sold, and there is- no difficulty in fixing its amount as stated in thé bill.; nor is there any difficulty in settling the amount due by notes from the complainant to the testator, as they aré not contested in the pleadings. But there is great difficulty in ascértaining what was due to Gill at his death; and whether the amount due by notes is to be increased by any additional sumí On this' question but feuT causes present greater doubt, on matters of fact.
First it may be contended, that the consideration of one thousand dollars, expressed in the deed, might to haveyveight.
It is, indeed, a correct doctrine, that wherever consideration is made a question between the parties to the deed, that which is expressed cannot he destroyed by parol testimony, although some authorities permit additional considerations and motives, consistent with that expressed, to be proved. See Roberts on Stat, Frauds 117, 118. Morris vs. Morris, &c. 2 Bibb 311. ¿ut here the consideration is no aid in proving the debt. It shews a round sum paid by Gill to Hanks, and expresses no sum still due from the latter to the former. Besides, it is admitted in the answer that other property was conveyed; and it is proved that another instrument was executed at the same time, conveying other estate, which is not before the court, and what its consideration was, as expressed, we cannot tell, whether it was debt .due or a sum paid. As the consideration expressed shews no debt still due, proof that there was none, does not contradict the deed; ánd to charge up the consideration against Hanks, is contravening the •.expressions of the deed which shew it already paid.. In addition to this, the writer of the deed deposes that the object of the deed was to secure the estate of Hanks against a claim set up against him, which he pronounced unjust, and which he feared would be asserted against him; and he, the writer, inserted what consideration he pleased, Gill declaring at the time, that *98 there was nothing due from Hanks to him. This proof; so far as it shews no debt, is compatible with the deed, and leads to the conclusion that there was no debt remaining due at that time; and no other proof in the cause shews that there was any, except what might bé taken from a seeming admission in the bill, that something was due at the time. But the bill is not explicit as to the time when he became indebted; and these expressions rather seem to be an adoption of the language of the defeasance of the deed, which is dated on the 16th of August, 1814, upwards of six months after the deed was executed, which bears date on the 6th of February, in the same year. It is, then, immaterial whether the deed of conveyance for the land be considered as an absolute deed, as it purports to be, or one with a fictitious consideration to hide the estate of Hanks from some dreaded claim, during the whole of these six months. For during the greater part of that period, no ■debt is shewn to exist. At the aforesaid date of the •defeasance (as it may be called) this deed, be it what it might before, was changed into a mortgage or security for money, as the afore recited instrument of waiting from Gill to Hanks testifies. At the date of this writing, which is long after the deed of conveyance, there is evidence of a debt due from Hanks to Gill. For one of the smaller notes given by Hanks to Gill fell due or bore interest one day before the date of this defeasance, and to two of the larger notes no date is affixed. To these, then, the defeasance has a sensible reference by the expressions, liall he owes me;” and the dealings contemplated are included in the further expressions, “ and may hereafter owe me.” Accordingly, the subsequent notes bear date after the defeasance. Hence we conclude, that the notes produced and held by the executor are all the demands due. The only further proof adduced to rebut this conclusion, is the deposition of Wilson, who states that he became security in a note for Hanks to Gill, for the sum of thirteen or fourteen hundred dollars. That other persons were to have joined as securities; but finding they did not, he spoke to Hanks on the subject, who some time afterwards brought him the note, and he lost it. But as to the time when this happened, the witness is uncertain; but thinks it was before the sale of the land to the several purchasers by the consent of Hanks and Gill, This *99 ¡foils far short of the allegation in the answer, that this note was given up, as the executor,had been informed, in consideration of the conveyance of the land and other estate, without any other payment; which was an essential fact to be proved, before the purchase money for the land could be appropriated to discharge it, after it was taken up and surrendered. The presumption then is, that this note was paid and taken up by other means. And in corroboration of this presumption, the same witness deposes, that finding he had lost the note, he feared it might one day come against him, and he therefore stated his fears to Gill and asked him for a certificate that it was paid. That Gill laughed at him, stating there was no danger; but ultimately offered to give the certificate required. Besides' this, it is evident there were other dealings, not detailed in the bill and answer, as there are at least two credits on the notes, which are not mentioned in the pleadings. Moreover, two of the largest notes held by Gill on Hanks, and now produced by his executor, bear date subsequent to the sale of the land to the several purchasers, by Hanks and Gill; when it is not probable that Gill would still have advanced money, when the fund produced by the sale of the land was inadequate to discharge the note to which Wilson became surety, and the remaining notes which he then held on Hanks. Hence we conclude, that the court below did not err in disallowing the amount of the note of thirteen or fourteen hundred dollars, whichhadbeen surrendered, out of th.e land.
That court, however, did not take an exact account and ascertain the balance which might be supposed to have eventuated in favor of Hanks; relying, it is pre-. sumed, on the conflicting declarations of both parties, after the final sale of the land,, of which there is considerable- proof in the cause, and- which strongly conduces to shew no balance. Hanks sometimes stating that the sale of the land would not extricate him from Gill’s debt; and Gill supposing there would.be little or nothing between them. Of the want of this account, we conceive that the appellant ought not to complain; as there appears to have been enough, after interest, was allowed, to settle all the demands he holds.
The decree is, therefore, affirmed with costs,,.