## JULY TERM, 1842.

### DAVIS, ADM'R OF NASWORTHY HUNTER, *v.* YERBY, EXECUTRIX OF WILLIAM YERBY.

D. filed his bill against Y., executrix of W. Y., alleging that the estate of W. H. was indebted to him; and that W. Y., while administrator of W. H.'s estate, had rendered himself liable to that estate, and sought to subject that liability to the payment of the debt of the estate to him; *held,* that the administrator, *de bonis non* of W..H., was a necessary party to the suit, the estate of W. H. not being finally settled, or alleged to be insolvent.

An administrator, who sells property of his intestate, and takes insufficient security for the payment of the purchase-money, is liable for the amount lost thereby, if he did so from *bad faith,* not otherwise.

A bill against an administrator, charging him with waste and embezzlement of his intestate's estate, must make specific and definite charges of the particular waste and embezzlement; general charges are not sufficient.

Where it is sought to charge an executor for default or negligence, the particular default must be put in issue, and established by evidence.

An administrator of an administrator cannot be called to account for the estate of the first's intestate, without proof that the estate in fact came to his hands.

Where an interval of 12 years has elapsed, since an executor has ceased to act in that capacity, and an attempt is made to bring him to an account; and he answers that he has fully administered, no decree for an account will be rendered against him.

THE bill in this case stated, that Henry Hunter died in 1822, leaving a large estate, real and personal, considerably embarrassed.

That William Yerby was appointed administrator, and reported an inventory of personal estate, amounting to $11,457·76; and returned an account of sales, of both real and personal estate, amounting to $21,276·42.

Beside said assets, that Yerby sold cotton of the estate, for $383·20, and took in payment the note of Field P. Hunter, which was of no value.

That he collected $42·75 from Quick, for which he never accounted.

That he sold, as per account of sales, property to Joseph Hunter, deceased, to the amount of $371, and took the note of Joseph Hunter and Thomas Dawson, his security, who was insane, and the note of no value.

That he sold William Hunter property to amount of $1726, and

Davis v. Yerby.

took his note with Thomas Dogherty security, and both insolvent, of which only $577 was collected, the balance, of $1149·25, lost.

That he sold to John Bell, land for $1387·50, and took no security, and the debt lost.

That he sold Field P. Hunter property for $183·10, and took no security, and debt lost.

That he became debtor to the estate on his own account, $1111·22.

That Yerby afterwards died in 1824, without having paid the debts, or any part of them.

That complainant Davis was appointed administrator, *de bonis non*, and paid the debts, to the amount of $18,366·38, being the greatest part due, and owing by Hunter's estate, and hoped to have collected enough of debts due the estate, to have paid all said debts, which he would have done, if Yerby had discharged his duty while administrator.

The bill charges, that Yerby, though large amounts of moneys and effects came to his hands, never paid the debts, but eloigned, embezzled, and wasted the effects, and, by his neglect of duty, suffered to be lost and wasted, by pretended sales to insolvent persons, property to the amount of $7968·22.

It admits he received, from Yerby's representatives, various paper accounts, demands, &c., but, by the negligence and improper conduct of Yerby, never realized enough to pay the debts, to within the amount of $2635·92, to pay and satisfy himself for moneys disbursed by him.

That in his last settlement with the Orphans' Court, that sum, $2635·92, was allowed him as a balance due.

That he cannot reimburse himself that amount by any assets, other than those for which Yerby, on account of his waste and embezzlement, should be made liable.

That there are other creditors of the estate not yet paid.

That Nasworthy Hunter became a purchaser, at said administrators sale, of property to the amount of $6675, which sum was paid over to said Davis, complainant.

That Nasworthy Hunter paid a judgment, in which he was security for said Henry Hunter, for $1309·60, with interest and costs,

amounting, on the 31st of Jan. 1833, to $2311·36, which account was duly presented to the Orphans' Court and allowed, but not paid by Davis for want of assets.

That Nasworthy Hunter died in 1834, and complainant Davis is his administrator, and now holds said claim against the estate of Henry Hunter.

That, in 1834, complainant was discharged from his office of administrator of Henry Hunter's estate, and Thomas Hunter appointed administrator, who has received no assets.

That Elizabeth Yerby is executrix of the estate of William Yerby, deceased, and has never settled and accounted for the wastes and embezzlements of the said William Yerby, aforesaid.

That complainant, claiming as a creditor of said Henry Hunter's estate, and as administrator of Nasworthy Hunter's estate, being without relief, prays an answer, and that she may account with complainant in his individual right, and as administrator of Nasworthy Hunter, of and concerning the estate of said Henry Hunter, which came to her husband's hands, to be administered, and for all the loss and injury incurred by the waste and mismanagement of said Yerby, and, out of the sum found due, decree to complainant, in his own right, and as administrator of Nasworthy Hunter, the sums claimed.

Mrs. Yerby's answer stated, that her husband was appointed administrator October 18th, 1822, and removed August 28th, 1823, for failing to give counter security required of him. He was administrator only about ten months; she states, that the heirs and distributees were principally interested in the proceeds of the estate, and that she believes the property, real and personal, was sold under an order of the Probate Court, at the instance of said Nasworthy Hunter, and the other heirs; that the property was principally purchased by the heirs, and such security taken as was satisfactory to them; she denies the several charges of loss to the estate, specified from taking insufficient security, &c., and charges the loss, if any, to the neglect of the complainant; denies the general allegations of waste, embezzlement, &c., by which a loss of $7448·23 was occasioned to the estate; denies that the estate is indebted to Davis, for debts paid by him.

States, that Davis was appointed an administrator *de bonis non,* on the 17th Nov. 1823, and that all the bonds, deeds, notes, accounts, vouchers, papers, and property of whatever kind, belonging to the estate of said Henry Hunter, so far as they came into the possession of said Yerby, and remained unadministered, were delivered to said Davis.

That John Bell is the security in the administration bond of Davis, whom he now charges with insolvency, and that the estate was embezzled by Yerby's taking him as a purchaser of land.

That Davis rendered no inventory of the estate which came to his hands until May, 1825, when he filed a statement admitting assets in his hands to the amount of $28,681·57, none of which claims were represented by him to be desperate or doubtful, except a claim for $6674·73 for property sold Nasworthy Hunter, which he states the heirs agreed to receive back again.

That on the 26th of April, 1829, Davis rendered an account, in which he admits he had collected $12,594·75, and charges the estate with the sum of $13,135, and on the 30th of June 1830, rendered a second account, in which he admits a further collection of $233·77, and charges the estate with the sum of $300·73, showing an amount, admitted to be collected by him of $12,828·52, a sum exceeding, as defendant believed, the whole amount of debts due by the estate, at the time Davis was appointed administrator *de bonis non.*

That it appears from admissions of Davis, in his bill, and from his said last account and vouchers accompanying it, that he collected a large sum from Nasworthy Hunter, for a part of which he has never accounted.

Denies that Henry Hunter's estate is indebted to Nasworthy Hunter the sum of $2311·36, for moneys paid by said Nasworthy, on a judgment, as security for Henry, or that there were not assets to pay ; but avers, that in a settlement of accounts between said estates, a large balance was found due from said Nasworthy to said Henry, which balance was collected by Davis and never accounted for, as defendant believes, but, if not collected, is still due and owing the estate of Henry Hunter.

Avers, that many of the debts said Davis alleges he paid for

Henry Hunter's estate, were contracted since the removal of Yerby from the administration.

Avers, that on the last account of Davis with the Orphans' Court, a large item for interest is allowed on account of advances made in payment of debts, which ought not to be allowed, because he at all times had sufficient funds to pay said debts; she denies the correctness of said accounts, and calls upon him to produce the vouchers.

Avers, that Davis has never made a final settlement of his accounts with said estate, and that, when he does, he will be found largely indebted to said estate, as she believes; she makes an exhibit of the record of the proceedings in support of all her statements.

She admits, that after the death of her husband, she never rendered an account of his administration, as her husband was removed before he had fully administered upon any part of the estate; but, as far as he had administered, had rendered an account of his actings and doings, by returning an inventory and account of sales, and all the assets, thus remaining unadministered, were delivered to said Davis, and she has never been *cited* to render any further account.

That for all the matters claimed in this suit, Davis sued her at law, and a final judgment was rendered against him in the Supreme Court, which she insists on as a bar; she also makes her answer a demurrer, and asks leave to rest on her demurrer at the hearing of the cause.

No proof was taken by either party, and the case was submitted for final decree.

*Henderson*, for complainant.

*Winchester*, for defendant.

Complainant's claim to call Yerby to an account for a maladministration of the estate of Henry Hunter, in taking insufficient security for the purchase-money of lands and personal property, sold under the order of the Orphans' Court, is based solely upon two facts.

1st. That Davis, as administrator *de bonis non*, has paid debts

of the estate of Henry Hunter, to an amount of $2635·92, beyond the assets which ever came to his hands. That he paid, under an expectation that he could collect, out of the notes, &c., delivered to him by the former administrator, enough to pay all the debts ; but that, owing to the maladministration of Yerby, these notes, &c., turn out to be insufficient to indemnify him for the debts he paid.

2d. That there is also a debt due Nasworthy Hunter, of $2311·36, with interest from the 31st of January, 1833, from the estate of Henry Hunter, which has not been paid, because there are no assets to pay, for the same reason of maladministration on the part of Yerby.

Suppose these facts existed, could Davis, as a creditor of the estate of Henry Hunter for debts paid by him as administrator *de bonis non*, beyond assets which came to his hands, and for a debt due him as administrator of Nasworthy Hunter from the estate of Henry Hunter, come into a court of chancery to charge Yerby with maladministration, waste, and embezzlement, in taking insufficient security for property sold ?

2d. But it is denied the estate of Hunter is indebted to Davis, for debts paid by him beyond assets which came to his hands, or that, in the settlement of the accounts between the estate of Henry Hunter and Nasworthy Hunter, the estate was indebted to Nasworthy ; but on the contrary, that Nasworthy, on said settlement, was indebted to the estate the difference between $6675, which, Davis admits he received for him, and $2311·36, for which difference Davis has never accounted.

In May, 1825, Davis admitted claims and assets in his hands, to the amount of $28,681·57, deducting $6674·73, due from Nasworthy Hunter for property which the heirs agreed to take back, but which it seems Nasworthy Hunter afterwards paid Davis.

What became of all these assets ? Davis has never reported them desperate or doubtful ; on the contrary, he admits in his bill he expected to collect them. But he has only in his last account accounted for $12,828·52, and he only has charged the estate with debts, expenses, and all other charges, to the amount of $16,232, to which, if the debt claimed to be due Nasworthy Hunter were added, it would be less than $19,000, leaving a balance of more than

$10,000 in the hands of Davis, unaccounted for, beyond all debts due from the estate, up to the 30th of June, 1830, after an administration of 7 years. No final account has as yet ever been rendered by Davis, and, admitting the accounts he has already settled to be correct, which is disputed, upon a final settlement, he must show an amount of more than $10,000 in his hands due to the heirs upon his own showing, and upon the face of the record, filed as an exhibit by Mrs. Yerby.

It is plain, then, that if Yerby has been guilty of maladministration, and could be held to account in chancery for maladministration, he is not accountable to Davis, but solely to the heirs and distributees.

3rd. But there is no maladministration, embezzlement, default, or waste, on the part of Yerby, in not paying the debts, or in taking insufficient security. Yerby was removed before he had the means to pay a debt, and everything was delivered into the hands of Davis, administrator *de bonis non*. The inventory, returned by Davis, shows he had received all the assets of the estate ; all that Yerby could be called upon for, would be the amount of his purchase at the sale of the estate. For that he is entitled, as an offset to his commissions, which would be more than the amount. This can furnish no ground to come into chancery, even by a person having a right to call him to account. If any one has a claim against him for this sum, it is the present administrator *de bonis non*, Thomas Hunter.

*Boyd*, on the same side.

CHANCELLOR. The complainant seeks by his bill to set up two claims, which he desires to enforce against the defendant ; one in his private capacity, as a creditor of the estate of Henry Hunter, for money paid by him as administrator *de bonis non* of that estate, over and above the assets of the estate that came into his hands as such administrator ; he having discharged more of the debts of that estate than there were assets in his hands to be administered. The other claim which he seeks to establish, is, in his character of administrator of the estate of Nasworthy Hunter, to whose estate he alleges the estate of Henry Hunter is now indebted.

The bill states, that Thomas Hunter is the present administrator of Henry Hunter, deceased, but does not make him a party to the cause.

The defendant, as executrix of her deceased husband, denies all the allegations of the complainant's bill ; asserts that her testator fully discharged his duties as administrator of Henry Hunter ; and, while she insists upon the judgment in the suit at law brought by the administrator of Henry Hunter against her, in bar of the claims here attempted to be set up, she also relies upon her demurrer to the bill, which she has made part of her answer.

Neither party has taken any proof : I am, therefore, compelled to decide the cause from the facts, as they are developed by the pleadings.

It is clear, that Davis has no right to call for an account or a settlement from the defendant, except for the purpose and to the extent of making available the two claims which he holds, one in his own right, and the other as administrator of Nasworthy Hunter. But can he do this ? can he press either of these claims to a settlement, without making the present administrator of Henry Hunter a party? What is he seeking to do ? It is, so far as his claim against the estate of Henry Hunter is concerned, to coerce out of the defendant a debt due to him by that estate ; and he is endeavoring to do so, without making the representative of that estate a party to the suit ; and this, too, without there being any allegation of the insolvency of that estate, or that it has been finally settled. This is contrary to the rule upon that subject. The present administrator of Henry Hunter should have been made a party.

If, however, this were the only objection to the complainant's bill, it would not be dismissed, but would be directed to stand over for proper parties.

Passing by, then, this objection, I proceed to examine the case on its merits. The bill charges, that while the defendant's testator administered the estate of Henry Hunter, he was guilty of gross neglect and mismanagement of that estate, whereby large sums of money were completely lost to it : that he sold property of the estate, and took insufficient security for the purchase-money, by means of which the debts were rendered worthless, and a loss to the estate,

I can have no doubt, that if an administrator acts in bad faith in taking security which proved insufficient, he would be held liable : his liability, however, would extend no further. So, if he were guilty of any gross negligence or wilful default in collecting claims, by which they were lost, he would be chargeable, but not otherwise. The bill, in this case, while it is full of general charges of maladministration of the estate, makes no specific and definite charges on the subject. There is the general charge, of wasting and embezzling ; but this is insufficient. In 1 Molloy, 469, the question of charging an executor with default or negligence, is critically examined by the Irish Chancellor, who states the result in this general rule, that, in order to ground a direction to charge an executor for default, not only must the fact be put in issue, but some case made by evidence to show the fact is probable, and the inquiry proper ; and that inquiry must be pointed to specifications. Let us apply this rule to the case before us.

1. Is the fact of default or negligence sufficiently put in issue ? It is true, the bill states he sold property to Joseph Hunter, and took his note, with Thomas Dawson as his surety, who was *both* insolvent and insane ; and that he sold, also, property to William Hunter, with Thomas Dogherty as his surety, who was insolvent ; but it is nowhere alleged, that Yerby took these sureties knowing them to be insolvent. He may have acted in good faith, for anything that is charged in the bill on these points, which cannot be aided by the general charges of waste and negligence : but,

2. Is there any evidence to show the fact is probable, and the inquiry or reference proper ? There is no testimony taken in the case, and the answer is a full denial of all the allegations of the bill.

There is another point worthy of consideration. It is not charged in the bill, that any of the assets of the estate of Hunter came to the hands of Mrs. Yerby, as administratrix of her husband, but it simply seeks to charge Yerby's estate with liabilities alleged, generally, to have arisen from the negligence of Yerby as administrator of Hunter ; and yet the bill calls upon Yerby's executrix for an account of effects received of Hunter's estate. In 3 Littell, 96, this point was presented for decision ; and it was held, that an administrator of an administrator could not be called on to account for

the estate of the first's intestate, without proof that the estate in fact came to his hands. But in this case, there is neither allegation or proof on that subject.

If, however, these grounds did not preclude the complainant from calling for an account, there is yet another, which is fatal to the attempt set up in the bill.

Yerby, it is stated, was removed from the administration of Henry Hunter's estate in August, 1823 ; the bill was not filed until July, 1835, being a lapse of nearly twelve years. The answer states, that Yerby fully accounted, as far as he proceeded in the administration, and that the assets remaining unadministered were delivered over to the present complainant. Under such circumstances, it has been held by the Chancellor of New York, in 3 J. Ch. Rep. 578, that an executor would not be decreed to account. After so long an interval, great difficulty would, of necessity, arise, in proving who were solvent or insolvent. Evidence once in existence, might, in the lapse of so long a period, be lost, removed, or the witnesses have died. It is, therefore, with great propriety, adjudged, that where the executor, when attempted, after so many years have passed since he ceased to act in his representative character, to be held responsible for his acts in that character, answers that he has fully administered, he will not be decreed to account.

The complainant's bill must be dismissed, at his costs.